You can call the next case, Evankavitch v. Green Tree Servicing. Mr. Byrd. Good morning, Your Honor. May it please the Court? David Byrd, representing Defendant Green Tree Servicing, LLC. I'd like to reserve four minutes for rebuttal. Sure. The district court held in this case that at trial a plaintiff could prove that a defendant violated the Fair Debt Collection Practices Act simply by proving that the defendant communicated with a third party in connection with the collection of a debt and that the defendant then had to prove that it complied with the Act, particularly Sections 1692B and C. That decision should be reversed, and the case should be remanded for a new trial. The decision is inconsistent with the ordinary default rule established by the United States Supreme Court in Schaeffer, which says that the plaintiff ordinarily bears the risk of failing to prove its claims. It's inconsistent with the structure and plain language of the Act, which does not make it a per se violation to simply communicate with a third party. And it is inconsistent with the practical realities of debt collection and with the balance struck by Congress in the Fair Debt Collection Practices Act. What happens when you're dealing with an exception to a statute, which functions, as I see it, very much like an affirmative defense? Well, I think, Your Honor, the first place to start with that analysis would be with what the Supreme Court said in the Schaeffer case. It's not true that in every plaintiff's case, the plaintiff bears the burden of every issue. Do you agree with that? It's certainly not. But the ordinary default rule, that's a quotation directly from Schaeffer, the ordinary default rule is that the plaintiff bears the burden and the risk of failing to prove its claims. So the issue for this Court in trying to allocate the burden of proof of trial under this particular statute is whether there is evidence in the text of the statute or otherwise that Congress intended to deviate from the ordinary default rule. If you look at the structure and the text of the Act, you do not find evidence that Congress intended to deviate from the structure of the Act. Congress began in the very first substantive section of the Fair Debt Collections Practices Act not with a general prohibition on communications with third parties, but with a Section 1692B that recognizes that collectors have a practical need to obtain location information about debtors. And Section 1692B expressly provides legal authority for that practice subject to certain requirements. Specifically, under 1692B, a collector can contact a third party once or more than once to obtain location information on a debtor subject to the Act's requirements. Only after providing... You went over that reasonable belief provision. Well, yes. Well, there are a number of requirements about how the collector is supposed to go about it. But you reasonably believe that the debtor... I'm sorry, that the third party has given wrong information. Correct. That now has the correct information. Correct. How would a debtor know that information? I mean, you would be the one that's privy to that information. Doesn't it make sense to put the burden on you to establish compliance with the statute? No, no, it does not, because, again, you have an ordinary default rule and you have a statute that expressly authorizes this type of practice subject to certain requirements. It is the plaintiff here that is seeking to state, that is alleging and then attempting to prove that we did not meet those requirements, and the plaintiff should be required to prove that we did not meet those requirements. Mr. Bird, would you agree that the normal rule is that exemptions from general rules and statutes have to be proven by the party claiming the exemption? That is the normal rule in a situation in which you have a statute that indicates an intent by Congress to set up an affirmative defense. The Schaeffer decision walks through that rule that Your Honor just posited and the ordinary default rule and explains how they work together. And where there is an absence of evidence in the statute of congressional intent to set up an affirmative defense, the Morton-Solt rule that Your Honor is speaking of simply does not apply. We have here, if we go to the plain text of the statute, as I understand part of your argument, you're asking us to look at 1692K and to say that where it's got except is provided in this section, that's what indicates that the two provisions, the good faith and the advisory opinion, are the exclusive affirmative defenses. Well, what I would say, if I may, Your Honor, what I would say is that 1692K and the general rule that's set out at the beginning of 1692K establishing liability and the two specific exceptions enumerated there are a typical example of classic affirmative defense creating language. Language that indicates that Congress in that particular instance moved away in those respects from the ordinary default rule described in Schaeffer triggering the alternative rule that Judge Fischer posited from Morton-Solt. Why isn't that exactly what we have in 1692C? It may be in a different order, but 1692C lays out a general prohibition and it starts with exactly the same kind of clause, except is provided, and it actually refers us back to B as the list of exceptions. If I may, Your Honor, let me try to give you a two-part answer to that. The first part will be a structural and a textual one, and the second one will be a practical and a policy-driven one. First of all, the order of the statute matters. The statute begins by authorizing third-party communications for location information. It does not have the structure that one sees in the cases where the Morton-Solt rule is applied, for example, in the context of the ADEA, where you have a general rule followed by, in either subsections or subsequent sections, a specific carve-out. That's an accurate statement, but doesn't the statute clearly say once? The rule says you can contact third parties once. The statute says you may contact third parties once and then you may contact them again unless or except. Unless or except. Okay, now, the question here is whose burden does it become to establish that language that comes after unless and except? These are substantive rules of conduct that they are alleging that we did not meet, requirements that we did not comply with. They have the burden of proving that we did not comply with them. We should not have the burden of having to justify routine, lawful business conduct. Let's look, if I may. Let me go back to what I asked you before. How is it better to prove what you reasonably believe? The statute says reasonably believes that the earlier response of such person was wrong. How would they prove that? And that that person now has the correct information? Well, that's. So in that context, doesn't it make sense to put the burden on the person or the party claiming the exception? I think, Your Honor, as we explained in our reply brief, this concern about asymmetrical access to information and who will be easier able to prove something is one that's frequently raised in this context and also one that is historically overemphasized. The McCormick Treatise Section 337 explains this in detail. The law frequently requires plaintiffs to plead and prove things that they do not necessarily have access to information about. That's why we allow pleading based on information. You would have access to it. We would have access to it. You're the one making the phone call. And the plaintiff at the time of trial will have access to it as well because the plaintiff has a right to obtain discovery. So, for example, to Your Honor's question, what would the plaintiff want to attack? They would want to try to show that the call was not for the purposes of obtaining location information. They might want to show that it was not actually made with any kind of belief about erroneous information or corrected information. They might want to show that that belief was not objectively reasonable. Those are three things that they would attempt to prove. How would they attempt to prove them? They would discover our records demonstrating when calls were made. They would depose witnesses within the corporation about the time it was made. They would produce their own witnesses who received the calls and could attest to the timing and the communication of them. And they would establish the circumstances, the timing, and the context, and they would argue to the jury that that shows that the collector did not have the required information. You cite In re Sturton, and you say In re Sturton helps you, but whether it does or it doesn't in its comparison to the statute in In re Sturton, do you accept the test that Sturton accepted from the Fifth Circuit that has the three prongs that we should consider in trying to determine who has the burden? I think I do, Your Honor, except I think that the touchstone that you have to begin with, and I think Sturton is ultimately consistent with this, is what the Supreme Court said in Schaefer, which is that there is an ordinary default rule that assigns burdens to the plaintiff and that you move away only when you have specific evidence that suggests a congressional attempt to change the rule. And I think that the emphasis on particular choices of words of unless or accept is not controlling here, particularly when you look at the way 1692b and c function, not as creating a general rule and exceptions, but as two statutes that regulate overlapping conduct, how you obtain location information and communications with third parties. Those are separate subjects, but they overlap, and the statutes explain how they work together. But the choice of terms where you have statutes that are explaining overlapping conduct rules this way of accept necessarily will not be indicative of any kind of congressional attempt to set up an implied affirmative defense. Do you think Congress drafted 1692 with an eye towards who should have the burden of proof? Well, we know it did. We know it did in 1692k because it specifically assigns the burden of proof there. We also know from the legislative history that the requirements in 1692b are described as the provisions that authorize conduct. They're never described in legislative history as defenses. And the only things that are described as defenses are what's traditionally recognizable as a defense, which is in 1692k. So I think they did probably draft with an eye towards this. I'm sorry. I think that statement may sweep too broadly, and this may go to some of the perils of relying on what's easily available electronically in legislative history. But it appears that in the early versions of this statute, in H.R. 5294, that section what is now 1692c actually has a provision in it, pleadings and proof. In any action brought by a consumer against a debt collector under this section, it shall be the duty of the consumer to plead both the existence of a communication from the debt collector and the lack of consent of the consumer thereto, and to make a prima facie showing that the communication took place and there was no consent, a prima facie showing that consent was not obtained can consist of testimony by the consumer. Upon such a prima facie showing, the burden of going forward shall be with the debt collector. Doesn't that suggest that in generating this provision that what was intended was that after that initial showing, that is that 1692c is really the prohibition. There needs to be a showing by the consumer there, and that what is then referenced back in subsection B was intended to be an affirmative defense with the burden on the debt collector. I have a red light, Your Honor. I do want to answer your question, but I also want to save some time for rebuttal, if I may, briefly. I don't think that a bit of history leads to the conclusion that Your Honor suggested. In fact, I think it leads to the opposite conclusion because, of course, Congress struck that language and did not enact it. Instead, what they enacted is the statute that you see. And in that regard, Congress, in enacting the entire statute, struck a balance that needs to be considered by this Court between the interests of debt collectors in lawfully pursuing legitimate business activity to collect on debts and the interest of debtors. And 1692b and 1692c, read together, reflect that balance. The reality is that contacting third parties to obtain location information about debtors is a necessary and routine business activity for collectors. The collector is typically involved in a case only after a debtor has been in default for many months, as the record shows here, and the debtor is in distress. Debtors frequently will change telephone numbers, will change locations and residences, either because of difficult circumstances they may be facing or out of an affirmative desire to avoid debt collectors. So communications with third parties over location information is an unavoidable and everyday occurrence for debt collectors. They literally cannot do their jobs and do the lawful business of debt collection unless they're able to do it. So what Congress said about it at the very beginning of the statute was to say that debt collectors could do that essential work, consistent with certain subjected regulations, and that the burden, therefore, should be on the plaintiff to prove that those regulations and those requirements have not been complied with. I'll save the remainder of my time. Mr. Gupta? Good morning, Your Honors. Thank you. And may it please the Court. Deepak Gupta for the plaintiff athlete, Patricia Evankovich. The Fair Debt Collection Practices Act makes it illegal for a debt collector to contact a consumer's neighbors, relatives or employer for the purpose of collecting a debt. And we think the most natural way to read the statute is that it also sets up a narrow, detailed exception from that prohibition. And it says a debt collector may contact a third party to seek location information only, and only once. And then there's an even more detailed and narrow exception if the debt collector wants to engage in additional efforts to contact third parties for location information. Mr. Gupta, are you asking us to find an affirmative defense in 1692B in its entirety, or simply in the unless clause? I don't think you have to reach the question of whether. I think the natural way to read the statute is that the entire provision that's set out separately is an affirmative defense, is an exception. But I think the question before you, and I think both parties agree on this, is the more narrow question, which is, is that incomplete information defense? Is the question when you're making additional contacts, is that an affirmative defense? I think that's the only question before you. And so I think if you wanted to write the opinion narrowly, you could say, at least when the debt collector is seeking to make multiple contacts and is relying on its subjective purpose in making those contacts, and its subjective and objective belief, the reasonable belief, that there's additional information, and the lack of information in its possession, all things that the consumer can't have access to, at least under those circumstances, we hold that that is an affirmative defense. Sorry, you have a good structural argument. If we're looking at the except clause, it's referring us back to B. But in terms of what you would otherwise get out of Meacham or Kentucky River, where part of what the Court was looking toward was that the exceptions have been put into a separate section. They've been separated from the general prohibition. Don't you lose that if you're pointing us to the unless clause, which isn't even separated by a comma from the rest of that section? I don't think so, Your Honor. And I think you can really just walk through the analysis in Meacham, and almost every step of the way helps us. And I do think, as I said, I think the natural way to read 1692B is that it is a provision that's set out separately. Congress says except as provided in that section, you know, there's this prohibition. And so the entire thing should be read as an exception from 1692C as an affirmative defense. And so if we had a case, let's say we had a case here, instead of the 20 or 30 calls that the debt collector made here in this case, you had a case where the debt collector only sought to justify one call to a neighbor. And so they were arguing simply that we had the purpose of seeking location information. Even under that circumstance, I think the natural reading, following Meacham and the Supreme Court's other cases, is to say that's an affirmative defense. It's laid out separately as an exception. The debt collector is seeking to get out of the general prohibition by relying on their subjective purpose in making these calls, something that the consumer wouldn't have access to. And it makes sense to say that's an affirmative defense. And my friend, Mr. Berg, doesn't deny that, you know, the burden of pleading typically travels with the burden of proof. And so the consequence, and I think Judge Fuentes' question's got to this, the consequence of saying that something is an affirmative defense typically means that the plaintiff would have to prove that element, I'm sorry, of saying that it's not an affirmative defense, would be that the plaintiff would have to prove it as part of the case. So you have to imagine the consumer or the consumer's lawyer in these cases. Whether or not we're dealing with a one-contact only case or a multiple contacts case, in either circumstance, how is that consumer or the consumer's lawyer consistent with their obligations under Rule 11 and Iqbal and Twombly? How are they supposed to frame the complaint? I think my friend would have them frame a complaint that says not only did they engage in these prohibited third-party contacts, but they did so without a certain purpose. And how is the consumer to know that? There's no way the consumer would have access to that information. I want to turn you to Inres Sturton. You cite Inres Sturton to cite the test that needs to be used that we adopted from the Fifth Circuit. But doesn't the ultimate decision in Inres Sturton cut against your argument because it was based on unfair surprise? Is there any surprise here to your client? Well, I think there would be in the sense that, again, if you take this as something that the plaintiff would have to prove at the outset, I think most consumers would be surprised that they'd have to prove that at the outset. And I don't see how they would have the information necessary to do that. And we were surprised. I mean, talking to the trial lawyers here, they were surprised that this defense was raised. It wouldn't have been apparent at the beginning that there would be any reason that, given the 20 or 30 calls that were made here, that that defense would be raised. The Sturton test, it's this Court's precedent, and I think it's helpful. The Ingram case from the Fifth Circuit on which it relies is helpful. But those are cases that are actually interpreting Federal Rule of Civil Procedure 8C, and they are very specifically about the burden of pleading rather than the burden of proof. And so we cited Sturton because, of course, it's one of your cases and we think its motive analysis is helpful, but I actually think the cases that are more on point are the cases like Mecham from the Supreme Court that are about the burden of proof. And Mecham also discusses the Schaeffer case on which my friend relies and I think synthesizes the two default rules on which the parties are relying. We don't deny they have a default rule that they're relying on. The default rule they invoke is the general rule that the plaintiff has to prove her case. We don't deny that that's the rule. The question is what happens when there's an exception to a prohibition. And the default rule, and it's a venerable one going back to Blackstone, Justice Holmes wrote about it, that's every bit a good default rule when you're interpreting federal statutes and that's that we don't have to prove the exception, they do. I wanted to ask you about the instruction. Was the district court correct when it instructed the jury that Green Tree violated the act by contacting third persons? I think that's right. That's a pretty strong statement to a jury. Sure. Without, I guess that was after the argument of counsel, but that's basically telling the jury you've got to find them culpable in this case. Without any deliberations. I don't think the court was saying you have to find them culpable. I think what the court was saying is that constitutes a violation of the statute, but they have a defense. And that's the same way they invoked the bona fide error defense under the statute. But the judge's instruction was they violated the act. Yeah, that's right. If you look at the bona fide error defense, which both sides agree is an affirmative defense, the debt collector gets out of liability under the statute, but the consumer has proven, if there's a violation, the consumer has proven a prima facie violation of the statute. So I don't think there's anything inaccurate in what the judge said. And I don't take that to be my friend's argument. They're not arguing that if this is an exception, if it is an affirmative defense, that that's a correct statement of the law. So I don't see any problem with the district courts. And it would be quite a strange thing to send it back simply to sort of tinker with the language. Was there any problem with the plaintiff establishing lack of reasonable belief that information that third parties have given is wrong and that the third party now has accurate information? I mean, you can't take depositions. You can submit interrogatories. You can get all that information from your adversary as part of your case. I mean, I think you could say that about most affirmative defenses. You could say, well, you know, why not just make this the plaintiff's responsibility because they could get that information. Is it just a matter that it's easier for them to show lack of knowledge than for you to show? Exactly. It's a question of efficiency, practicality, fairness. And at the pleading stage, you know, Judge Fischer asked about the Sturton case. The Sturton case makes this question of who has better access to the information in the Ingraham case, they make that a very critical part of the test. And I don't think there's any question that that part of the test favors us here. And, in fact, I fail to see how a consumer or a consumer's lawyer would even draft the complaint. You know, if I were in that position, I think I'd almost have to violate Rule 11. I'd have to allege something that I couldn't possibly know. Well, saying it's not an affirmative defense doesn't mean that you then need to plead it. I mean, it would be racist defense. It's really just a question of where the burden is going to lie, right? Well, I think the cases are pretty clear that the burden of proof and the burden of pleading travel together. So if you take the position that this is an affirmative defense on which the defendant bears the burden of proof, then the defendant would have to raise it in the answer. The plaintiff doesn't have to sort of allege the negative of that affirmative defense. So why aren't we then in the land of Schaefer, where we have an objective standard, if it's reasonable belief, and we have a statute that provides for discovery and provides for attorney's fees to give the incentives for the consumer and ability for the consumer to go forward, gather that information? Well, because this is an exception, and Schaefer isn't really dealing with the question of what do you do about exceptions. In fact, Schaefer itself acknowledges the default rule, and so does Mecham, that when you have an exception to the general prohibition, that that is in fact an affirmative defense on which the defendant bears the burden of proof. So the question is, is this an exception? And if you conclude that it is, then those cases, the conclusion is clear. It's an affirmative defense. If we look at this from the broader perspective of 1690, you're arguing that the 1692B itself lays out affirmative defenses. How is a practical matter, just being sort of a workable rule, would that be? Because does that mean in terms of the pleading by a defendant, that they would need to affirmatively plead, they didn't send a postcard, for example, listing out every one of those? And what about the argument that in practice this would open the floodgates? Here is activity that Congress has said is lawful. For location information, you can reach out. But are we then inviting, every time there's some outreach to a third party, for a lawsuit to be filed against the deckler? A couple of responses, Judge Grassley. First of all, this statute has been around for 40 years. We did a survey of the cases. The courts seem to uniformly regard this as the whole thing, the whole provision as an exception and an affirmative defense, and I don't think that the sky has fallen in. I think the settled expectations of the parties would actually be upset if you were to declare that this is a part of the plaintiff's obligation to prove this defense. And the second thing I'd say is it's quite a workable rule, because all the defendant would have to do in their answer is put the plaintiff on notice that they're intending to raise this defense and say, look, we in fact, yes, we made 20 phone calls, but one of them had the purpose of acquiring location information and the other 19 were about updating information. And then the plaintiff would know that that defense is actually at play and the parties would be able to litigate that defense. That's not an unworkable rule, and, in fact, it's the current rule. It's the status quo under this statute, and it's no different from lots of other. I mean, this is the general rule across the federal code, that when you set out an exception like this, particularly when it turns on information in the defendant's possession or the subjective beliefs of the defendant, it's not a big obligation. You clue the other side in by raising it in your answer, and then you have the burden of proving it at trial. And just in the limited time I have, I'd just like to briefly address the harmless error issue, because I think we're perfectly comfortable with the court reaching the merits and deciding the appeal that way, but there is a strong harmless error argument here, and that's because the burden of proof only matters when the evidence is in equitable place. And the Supreme Court has repeatedly said that happens very rarely. There are very few cases where the evidence is in equitable place, and I don't think the evidence is in anything close to equitable place here, and my friend hasn't really attempted to show otherwise. If you look at the top of page 8 of the red brief, you'll see a summary of the testimony of Mr. Heim, the neighbor. He was called repeatedly, and they didn't say to him, where is Ms. Ivankovich? They said, go tell Ms. Ivankovich. Go over to her house, so they knew where she was, and they were essentially attempting to recruit him to collect this debt, and he became very angry and told them so. Was there ever any showing that the information that he had initially given was wrong? I'm sorry? Mr. Heim, in other words, did Green Tree establish that the evidence that it was given by Heim was wrong, and they were now recalling it to get corrected? No, not at all. They didn't even get that far. I mean, they haven't even established that they sought information from him, that he gave them some information, let alone that it was wrong. So there's just nothing, nothing on this score, and if you look at the reply brief at page 15, the best you have are some sort of speculations that calling these neighbors might have produced some information because they live next door. That isn't even close to what the statute requires. It's a very detailed exception. But we can, if we – we can address the question of whether there was any error before determining whether that error was or was not harmless. You can, Your Honor, and we'd be perfectly comfortable with that. Thank you. Thank you, Mr. Gupta. Mr. Berg? Just briefly on the case law for a moment. My opponents suggested that there is support in the case law from his survey of cases for this particular allocation of the burden of proof. That's simply not true. Each one of the cases cited in their brief, we examined and analyzed. None of them involves a case where the burden of proof at trial was litigated, and none of them involve circumstances that would even remotely support the allocation of the burden of proof that is reached here. So in that sense, we are, I think both sides ultimately will agree, looking at essentially an issue of first impression. Let me for a moment try to take a step back at this note and come at this notion that assigning the burden of proof under the ordinary default rule to the plaintiff to prove this would put him under some impossible burden, either at pleading or at trial. These types of cases arise only when the plaintiff is aware, when the debtor is aware, that there has been some attempt by the collector to communicate with a third party about something. So from before the case is even filed, the plaintiff already knows that there have been third party communications, usually knows who or what range of people may or may not have been contacted, knows if it's been one contact or multiple ones, may have had conversations with the third party about the substance of that. So the plaintiff will not be either at the pleading stage or at the proof stage at the kind of asymmetrical disadvantage that my opponent suggests. And from all of that, as well as discovery that the plaintiff can obtain, the plaintiff will be in a position to put together a circumstantial case. In your case, what should the plaintiff have shown before you incurred any burden at all? Well, Your Honor, allow me to be both hopeful and somewhat circumspect that I don't want to give the plaintiff a roadmap to the strategy when you reverse and remand for a new trial. But I would think that they would want to begin by showing that, through circumstantial evidence of their witnesses and so forth, that we were not seeking location information, that the multiple contacts came at a time and in a frequency that is not consistent with any belief that there had been any change of circumstances or incorrect information. Now, the problem they will have if they attempt to go back and do that is their primary witness, Mr. Himes, is not particularly reliable or specific on these points. And the record as far as the timing of these contacts with the Himes, first of all, shows only two contacts. The first time we spoke with them was on August 24th. The second time was on August 31st. There were some attempts to call in between there, but we never made contact with them. And both of those are occurring at regular intervals after we thought, because of the passage of time and our attempts to contact the plaintiff had gone unresponded, that we would need to try to find if phone numbers had changed or someone had moved, something like that. And those are all documented in the record. So I think you'd begin by trying to show that. But I think they'll have a difficult time here, because ultimately I don't think we did anything wrong. As I said, this is a routine business practice. You didn't show in the trial, you didn't establish it. I asked Mr. Gupta that. You reasonably believe that the earlier response you got from Mr. Himes or Ivankovich's daughter was wrong. Now, you didn't show that because you didn't think it was your burden, or you didn't show that because you didn't have the information? Well, I believe that we could show – well, what we showed was that through the passage of time and our experience in these types of circumstances that over a two-month period of time when you've been attempting to contact someone and you're getting no response, after having had successful contacts with them in the past, there could be a circumstance where you would have a need to double-check or try to update information. And you might need to go back to someone and say, you told me this. Is that right? You told me she hadn't moved or she's still at this address. Is that actually correct, to double-check? Practically speaking, we have no other way to do it. But do you agree with me that you're the one who has to show that? That we have to show – well, no. That you reasonably believe that the information you initially got was wrong and that the person you're calling now has the correct information? No, I don't believe that. I don't believe that. I think it's the plaintiff's burden. The plaintiff is alleging that we did not communicate, that we communicated with third parties without meeting the requirements of 1692b. That's what their case is. I think it's incumbent on them to say why and how we didn't meet those requirements. They must know. Otherwise, they wouldn't have sued. And they must know from discovery, or they should be required to. Now, at this trial, we were required to. So it's a little bit hard to answer Your Honor's question in the hypothetical when we don't have a properly conducted opening, closing presentation of evidence and ultimately jury instructions. Doesn't it just point out that when we're talking about discovery and what's even going to be available to plaintiffs, even that the creation of that record is within the control of the debt collector? The contemporaneous record of calls is something that is being created on your client's end. And where we have a statute that has broad, sweeping, remedial purposes and we're told to construe it broadly, and the generation of the evidence either supporting that defense or being the burden of the plaintiff, as the case may be, turns on things that you can create. Shouldn't the burden be on you? Doesn't it make sense Congress would have intended that and we should interpret that accordingly? I have a red light, and I do desperately want to address the harmless error point before I go. So let me try very quickly to do that, and then hopefully I can segue to the harmless error point. I don't think so, Your Honor. And the reason why is because, first, as I said at the beginning, the presumption here that there is information asymmetry here is not actually accurate. The plaintiff has access and awareness to something about these conversations from its awareness that third parties have been contacted. As Mr. Gupta said, there is testimony from Mr. Heim about how often people may or may not have called. It doesn't actually corroborate with our records, but that's an issue for the jury. But the plaintiff has access to information. It's not entirely on us. They can get additional information from us. That's what discovery is all about. And they can use both their information and the information they obtain from us to create a circumstantial case that they can argue to the jury on all of the points that are described in 1692B. So I don't think, Your Honor, for that reason, that the burden of proof should be deviated from the ordinary default rule. There's been a lot of talk here about this as an exception. And while I recognize that the statute does in 1692B say except as in 1692C says except as in 1692B, and 1692B does use the word unless, I recognize those words fully. I don't think that the characterization of 1692B as an exception to 1692C is an accurate or a fair one. It's far too simplistic. What you have in 1692B and 1692C are overlapping rules that strike a balance. And the use of words like except or unless in the context of that is not indicative of an intent to deviate from the default rule. It's also the case that 1692C isn't exclusively about third-party communications. It actually begins with communications about the debtor. We have to finish up, Mr. Berg. Yeah, let me briefly turn to the harmless error point. Harmless error is recognized only when it is highly probable that the error did not affect the outcome. You've described it as a moderately stringent standard, and that you must be well satisfied that the record shows that the error did not affect the outcome. If a properly instructed jury, a reasonably properly instructed jury, could have found for Greentree in this circumstance, the error is not harmless. That's what you said in Forrest. That's what you said in Armstrong. Here, the argument on harmless error that they've presented focuses on the notion that they obtained admissions from Greentree's manager, Thomas Krell, but as we've explained in our reply brief, we don't believe that their characterizations of Krell's testimony are complete or accurate. And, in fact, what the record shows is that we only began contacting these folks after months of noncommunication and nonresponse from the plaintiffs to attempt to obtain location information. A jury could have believed Krell's testimony that we were attempting to obtain location information and that we had a reasonable need for that. Plaintiffs' counsel certainly thought that the burden of proof, instruction, and eliminate ruling was important. He mentioned it four times in his opening and four times in his closing, and we think that shows that the errors here were highly prejudicial. Juries are presumed to follow the instructions, and the jury here was left without important information that they needed to have about how the burden of proof should have been properly allocated. We're going to finish up, Mr. Berg. Thank you very much, and thanks, both counsel, for your excellent arguments. We'll take the case under advisory.